Cite as 2021 Ark. App. 388

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-20-586

| | |
|---|---|
| PST TAX INC. D/B/A H&R BLOCK<br><br>APPELLANT<br><br>V.<br><br>GLENNA TINDALL D/B/A YELLOW ROSE TAX/BUSINESS SERVICES<br><br>APPELLEE | **Opinion Delivered** October 20, 2021<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-20-274]<br><br>HONORABLE SUSAN WEAVER, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

PST Tax Inc. d/b/a H&R Block ("PST") appeals the Faulkner County Circuit Court's decision to grant the directed-verdict motion of Glenna Tindall d/b/a Yellow Rose Tax/Business Services ("Tindall") and the court's refusal to allow PST to call Tindall as a witness. We affirm.

I. *Relevant History*

On February 14, 2020, PST filed a preliminary injunction in the Faulkner County Circuit Court requesting that the court prohibit Glenna Tindall, owner of Yellow Rose Tax/Business Services, from preparing tax documents, filing taxes for any business entity, operating any tax-service business, and selling alternative tax and business solutions. PST asserted that Tindall, who had recently left PST's employment, violated the "post-

termination covenant" in the employment agreement she signed when she worked for PST. Section 10 of the employment agreement, the "post-termination covenant" provides that former employees (for two years after employment) will not directly or indirectly

> (1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services; or

> (2) Solicit Company Clients for the purpose of offering to such clients: (i) tax return preparation services; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services

PST asserted that Tindall began her own tax-preparation business capitalizing on PST's good will, business relationships, and reputation. PST claimed that Tindall was directly competing with PST, that Tindall had impermissibly solicited PST clients, and that Tindall might be soliciting other non-PST clients. PST contended that it would suffer irreparable damage from losing clients at the height of tax season, and the business's trade secrets and methods were at stake. Moreover, PST claimed that good will, reputation, and business relationships could not be restored through an award of damages. In support of the claim that PST had already lost business, it attached an advertisement from a local paper for Dad's Bait Shop, in which Dad's Bait Shop thanked "Yellow Rose Tax/Business Services (Glenna Tindall)" and other businesses, individuals, and organizations "who helped make this possible."

On June 24, Tindall filed a motion to strike and/or compel discovery. Tindall explained that on May 19, she propounded interrogatories and requests for production of documents, and though PST had responded, it had not answered many of the interrogatories. Tindall also asserted that PST had not responded to a good-faith letter

2

requesting a witness list, any communication from clients terminating PST's services, evidence of lost profits, a list of clients Tindall allegedly solicited, and all employment agreements regarding Tindall.

On June 25, the day of trial, PST responded that it had fully complied with discovery. PST claimed that it had provided the names, addresses, and phone numbers for Susan Taft, Kari Yarber, and Kathy Farris and information regarding its damages calculation. PST's response did not include a witness list, documentation regarding clients solicited by Tindall, or termination-of-services notifications.

Patrick Taft, owner of PST, testified at the bench trial. He explained that PST is a franchisee of H&R Block with offices in Arkansas, primarily in Faulkner County, and in Oklahoma. Taft stated that new employees receive specialized H&R Block training regarding the preparation of taxes and other business services. All employees sign an employment agreement containing a "post-termination covenant," which Taft explained is "standard" because H&R Block "is not going to train people to go compete against them." Tindall signed the employment agreement containing the post-termination covenant every year of her employment, and Taft explained that section 9 of the employment agreement forbids former employees from soliciting customers or preparing or filing taxes for anyone, including family members and friends, for two years postemployment. Later, Taft clarified that section 9 applies only to current PST employees. Taft recounted that when he realized Tindall was performing tax-related services from her new business, he sent a cease-and-desist letter to Tindall "reminding her that she has an agreement, and she can't do taxes." Through Taft's testimony and in support of his contention that Tindall was performing tax

services for former clients, a newspaper advertisement for Dad's Bait Shop was admitted in which the business announced its grand opening and thanked Tindall of Yellow Rose Tax Services and a list of others "for making this possible." A Facebook post with a "book now" feature dated "January 11" was also admitted. The social media post contained a photograph of Tindall's face, a reminder of the first day to file taxes, and the Yellow Rose Tax/Business Services business card providing Tindall's contact information. Taft testified that PST had lost clients, specifically that PST was "down a substantial percentage of Glenna Tindall's clients," which resulted in a projected $73,569.25 loss over a ten-year period. Taft requested an injunction to stop Tindall from preparing taxes for any clients—not just PST's—in the geographic area around Morrilton where she used to work for PST. Taft suggested that Tindall could do "anything that does not directly compete with what we do" such as substitute teaching, the job she had before going to work for PST.

At this time, the plaintiff, PST attempted to call the party defendant, Tindall, as a witness. Tindall's counsel objected, stating that PST had not included Tindall on its list of identified witnesses, and the only witness that the plaintiff identified was Patrick Taft. The court ruled against PST, stating that "you should have known that [Tindall] was going to be a witness, but at the same time, she was not listed." PST assured the court that its case-in-chief did not rely on Tindall's testimony and that the evidence presented was sufficient to prevail.

On cross-examination, Taft described an incident in which he accused Tindall of stealing the files of PST client Misty Harness and preparing taxes for her. Taft explained that Harness had contacted PST "looking for her taxes." Taft emailed and texted Tindall about

4

the matter and threatened to call the police; however, Taft testified, he had no evidence that Tindall had solicited any PST clients for their business, including Harness. Taft explained that his suspicion regarding Tindall was based on client-retention issues, stating that "there's lots of Tindall's people that we don't have. You've got Misty Harness here to testify. We didn't do her taxes this year. We've done her taxes since 2014." He later qualified that "there [were] assumptions made" about Tindall's having solicited Harness and preparing her taxes. He explained that he based his accusation on a review of PST's records showing which clients were no longer using PST's services and that some of them had been Tindall's clients when she worked there.

At the close of PST's case in chief, Tindall moved for a directed verdict, asserting that PST had presented no evidence of a violation of the agreement, Tindall's solicitation of customers, or any damages.[1] PST responded that the parties agreed that Tindall had signed the employment agreement, and Taft did not breach it. PST argued that the Dad's Bait Shop newspaper advertisement and Tindall's Facebook post are unrebutted evidence that Tindall solicited PST clients, and PST presented evidence that Tindall's PST clients were

---

[1]PST's motion was properly a motion to dismiss, not a motion for directed verdict. Arkansas Rule of Civil Procedure 50(a) provides that "[i]n nonjury cases a party may challenge the sufficiency of the evidence at the conclusion of the opponent's evidence by moving either orally or in writing to dismiss the opposing party's claim for relief."

Nonetheless, the circuit court must use the same legal standard in evaluating a motion to dismiss as it would in evaluating a motion for a directed verdict. The court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). If the nonmoving party has made a prima facie case on its claim or counterclaim, then the issue must be resolved by the finder of fact. *See Griffith v. Griffith*, 2018 Ark. App. 122, 545 S.W.3d 212.

no longer its clients. Counsel explained that Tindall's testimony would identify those clients and that she would testify that she had performed tax services after she left PST.

After clarifying that PST had performed no depositions before the trial, the court granted Tindall's motion pursuant to Rule 50(a) due to insufficiency of evidence.

PST reargued its position regarding the court's refusal to allow PST to call Tindall as a witness during its case-in-chief and further asserted that the employment agreement containing the post-termination covenant was sufficient evidence that Tindall had breached the contract.

PST timely filed a notice of appeal. On appeal, PST argues that (1) the circuit court erroneously weighed the evidence and relied on the preponderance-of-the-evidence standard in granting the motion to dismiss, and (2) the court abused its discretion in refusing to allow Tindall to be called as a witness during its case-in-chief.[2] We affirm.

## II. *Discussion*

Either party may challenge the sufficiency of the other's evidence by moving for a directed verdict in a jury trial or for dismissal in a bench trial as governed by Arkansas Rule of Civil Procedure 50(a). In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* Finally, our

---

[2]PST has abandoned the argument made below that Tindall was prohibited from performing any tax-related services for any client, including non-PST clients.

6

standard of review for the grant of a motion to dismiss is whether the circuit court abused its discretion. *Id.* The court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." *Woodall*, 347 Ark. at 264, 61 S.W.3d at 838. When deciding a motion to dismiss after the plaintiff rests his or her case during a bench trial, if the nonmoving party has made a prima facie case on its claim, then the fact-finder must resolve the fully presented case on the merits. *Phillips v. Denton*, 2018 Ark. App. 90, 543 S.W.3d 508. In evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the circuit court may not assess the witnesses' credibility. *First United Bank v. Phase II*, 347 Ark. 879, 902, 69 S.W.3d 33, 49 (2002).

The circuit court found that PST failed to present evidence that Tindall had breached the post-termination covenant by performing tax and business services for any PST clients or by directly or indirectly soliciting PST clients. The circuit court ruled that

> [t]here was zero evidence that she performed services for the PST customers last year. Mr. Taft himself said that they were assumptions and admitted that they were assumptions made of where his clients went. And there's zero anything to show that. And the soliciting—just because you make an advertisement doesn't mean you're soliciting customers—specific company customers. That—to say that would be to say that you could open a business but never advertise that business. And a simple advertisement that was not directed to a specific client is not going to be soliciting. Or an advertisement that wasn't advertised just to his clients.

PST characterizes the court's ruling as impermissibly weighing the evidence and relying on a preponderance-of-the-evidence standard. PST's argument is not well-taken.

Here, the court described, rather than weighed, the supporting evidence it considered in deciding that there was "zero evidence" to prove that Tindall directly or indirectly solicited PST clients or performed tax or business-related services for them. Taft testified that he could not provide evidence of a breach of the post-termination covenant

7

or that Tindall directly or indirectly solicited PST clients' business, and the circuit court agreed with his assessment of the evidence. The circuit court's statement that "an advertisement that wasn't advertised just to [PST's] clients was not soliciting" describes the content of the advertisement presented by PST, and the court's statement does not reflect that it impermissibly employed the preponderance-of-the-evidence standard by weighing the evidence. The court viewed the facts as true and found that PST failed to present any evidence that Tindall had breached the post-termination covenant. We find no error in the circuit court's ruling.

For its second point on appeal, PST asserts that the court abused its discretion by refusing to allow PST to call Tindall to testify during its case-in-chief. We disagree.

The decision whether to exclude or admit witness testimony rests in the sound discretion of the circuit court, and our standard of review of such a decision is whether the circuit court has abused its discretion. *NationsBank, N.A. v. Murray Guard, Inc.*, 343 Ark. 437, 445, 36 S.W.3d 291, 296 (2001). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Foster v. Foster*, 2015 Ark. App. 530, 472 S.W.3d 151. A circuit court is accorded wide discretion in evidentiary rulings and will not be reversed on such rulings absent a manifest abuse of discretion. *Arthur v. Zearley*, 337 Ark. 125, 138, 992 S.W.2d 67, 74 (1999). Rule 611(a) of the Arkansas Rules of Evidence provides that

> [t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

8

Here, the circuit court did not exercise its discretion improvidently, thoughtlessly, or without due consideration. The court heard counsel's explanation that PST had many opportunities to provide Tindall with a witness list and had failed to do so. Indeed, PST counsel stated that on May 19, Tindall propounded interrogatories and requests for production of documents, and though PST responded, it had not answered many of the interrogatories, including the request to provide a list of witnesses. Then, Tindall's counsel sent PST a good-faith letter requesting the information, but again, PST did not provide a witness list. On June 24, counsel for PST emailed Tindall's counsel, explaining that he planned to call his client, Patrick Taft, as a witness and again did not identify Tindall as a witness. Counsel for PST placed the blame on opposing counsel, asserting that before trial, he vacillated about whether Tindall would even attend the trial or testify if she did attend. Tindall's counsel denied that this conversation occurred. On June 25, the morning of trial, PST filed a response to Tindall's motion to compel discovery/motion to strike stating that it had fully complied with discovery and provided the names, addresses, and phone numbers for three people "with knowledge and documentation to support its claim, as well as witnesses for the court." It is undisputed that Tindall was not on the list. The court sustained Tindall's objection, ruling that "I think you should have known that she was going to be a witness, but at the same time, she was not listed." When PST renewed the motion to dismiss, the court explained the basis for the ruling, stating that

> [t]he reason I did not allow the defendant to be called as a witness is because the defendant specifically requested a list of the defendant—or of the witnesses to be called, and a list was provided I think even as late as yesterday afternoon, which was less than twenty-four hours before the hearing, and she was not on that list.

9

PST does not cite persuasive authority to support its contention that the circuit court abused its discretion by refusing to allow PST to call Tindall as a witness during its case-in-chief. In light of the considerable discretion Rule 611(a) vests in the circuit court to regulate the mode and order of witnesses and presenting evidence, and in light of the court's consideration of the circumstances described by each party's counsel, we find no abuse of discretion and affirm. *See Arthur, supra.*

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*WH Law*, by: *Chris W. Burks*, for appellant.

*Hylden, Miron & Foster, PLLC*, by: *Guy W. Murphy, Jr.*, *Sam Patterson*, and *Kayce M. Chaney*, for appellee.